UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:   Eric D. Biegler and Julia A. Biegler            Case No. 95-63615
                                                         Chapter 7
                        Debtor.

---

Julia A. Biegler,

                        Plaintiff,                       Adv. Proc. No. 15-80005

         v.

Educational Credit Management Corporation,

                        Defendant.

---

Appearances:

James F. Selbach                                         *for Plaintiff*
Selbach Law Firm, PLLC
290 Elwood Davis Road, Suite 290
Liverpool, NY 13088

William S. Nolan and Emily Perks Quinlan                 *for Defendant*
Whiteman Osterman & Hanna, LLP
One Commercial Plaza
Albany, NY 12260

### Memorandum-Decision and Order

This bankruptcy case was reopened to allow Plaintiff/Debtor Julia A. Biegler to bring this adversary proceeding which seeks a declaration of dischargeability of her student loans pursuant to the 1995 version of 11 U.S.C. § 523(a)(8)(A) that was in effect at the time the bankruptcy case was filed.[1]  Educational Credit Management Corporation ("ECMC") answered.  Following

---

[1] In pertinent part, the statute provided:
  (a) A discharge under section 727…of this title does not discharge an individual from any debt—
     (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
        (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition;
  11 U.S.C.A. § 523(a)(8)(A) (West) (effective until April 25, 1996) (hereinafter referred to as "§ 523(a)(8)(A)").

discovery, Plaintiff moved for summary judgment, which ECMC opposes. ECMC asserts that there are disputed issues of fact as to both (i) the maturity date of Plaintiff's loans and (ii) the repayment suspension periods. The matter is now before the court for decision.[2] For the reasons that follow, summary judgment is denied.

## Jurisdiction

The court has jurisdiction to hear and decide this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), and (b)(2)(I). This memorandum-decision and order incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052.

## Background History

Debtors Eric D. Biegler and Julia A. Biegler filed a joint chapter 7 petition on October 10, 1995. Included as debts listed on their schedules were certain educational loans taken out by the Plaintiff which have since been assigned to ECMC. Plaintiff received a discharge and the case was closed. Attempts to collect on the educational loans continued. Twenty years later the case

---

[2] The record on the motion consists of: (i) February 2, 2017 declaration of Attorney James Selbach (Doc. 42 as amended at 47) ("Selbach Decl."), with the following exhibits: (A) complaint, (B) answer, (C) four promissory notes ("Selbach Decl. Ex. C or the "Student Loans"); (ii) affidavit of Ann Corbett, Assistant Registrar at Syracuse University, sworn to on February 2, 2017 (Doc. 43); (iii) February 15, 2017 declaration of Attorney James Selbach (Doc. 47) ("Selbach Amended Decl."); (iv) affidavit of Ann Corbett sworn to on February 13, 2017 (Doc. 48) ("Corbett Aff."), with exhibits: (A) Debtor's academic transcript ("Corbett Aff. Ex. A or "Debtor's transcript") and (B) Graduate Student Application for Special Full-time Certification dated May 29, 1987 ("Corbett Aff. Ex. B or the "Enrollment Certification"); (v) statement of material facts (Doc. 49) ("Plaintiff's SOF"); (vi) affidavit of Julia A. Biegler, sworn to on February 14, 2017 (Doc. 50) ("Biegler Aff."), (vii) plaintiff's memorandum of law (Doc. 51) (collectively, the "Motion"); (viii) March 10, 2017 declaration of William S. Nolan (Doc. 53) ("Nolan Decl."), with the following exhibits: (1) pre-claim assistance request on New York State Higher Education Services Corporation ("NYHESC") letterhead dated as received on January 28, 1992 ("Nolan Decl. Ex. 1.1" or the "Pre-claim Form"); and (2) letter dated August 10, 2006, from William J. McGrath acting on behalf of NYHESC to Attorney James Selbach ("Nolan Decl. Ex. 1.2" or "NYHESC letter of August 2006"); (ix) March 9, 2017 declaration of NYHESC's General Counsel, Thomas Brennan, (Doc. 54) ("Brennan Decl."), with the following exhibits: (1) responsive fax from the servicer of the Student Loans, AFSA Data Corp n/k/a ACS Inc. ("Brennan Decl. Ex. 1" or the "AFSA fax"), (2) letter dated November 29, 2004, signed by William J. McGrath acting on behalf of NYHESC to Attorney James Selbach (("Brennan Decl. Ex.2" or "NYHESC letter of November 2004"), (3) February 28, 2008 letter signed by William J. McGrath acting on behalf of NYHESC to Attorney Scott Lipnick ("Brennan Decl. Ex. 3" or "NYHESC letter of February 2008"), and (4) letter dated December 10, 2008, signed by Bob Dallas acting on behalf of NYHESC sent to the attention of Mr. Prosachik at Attorney Selbach's office ("Brennan Decl. Ex. 4" or "NYHESC letter of December 2008"); (x) ECMC's memorandum of law (Doc. 55); and (xi) ECMC's statement of material facts (Doc. 56)("ECMC's SOF").

was reopened for the filing of this adversary proceeding in which Plaintiff seeks declaratory relief that the student loan debts at issue were encompassed by her discharge.

**Record Evidence of Undisputed and Disputed Facts**

Plaintiff's brief statement of material facts states October 10, 1995 as the date Debtor filed for bankruptcy and that Debtor listed the Student Loans on her schedules (Doc. 49). ECMC does not contest these facts, but notes Debtor's counsel's failure to cite to the record to support her statements and Debtor-counsel's inappropriate recitation of legal conclusions. Plaintiff's SOF is deficient in this regard in failing to "cit[e] to particular parts of materials in the record," as required by Federal Rule of Bankruptcy Procedure 7056. Furthermore, Debtor's SOF fails to address a critical element of her claim—the date that Plaintiff's Student Loans became due.

*1. Documents and Testimony Relied Upon by Plaintiff[3]*

Debtor began attending a doctoral degree program at Syracuse University ("SU") in the fall of 1982. To pay for her studies, Debtor incurred the Student Loans. Debtor's Student Loans include: (i) a $5,000 note dated November 22, 1982, (ii) a $2,896 note dated November 8, 1983, (iii) a $5,000 note dated June 20, 1984, and (iv) a $2,104 note dated August 7, 1984. Selbach Decl. Ex. C. Each promissory note similarly provides that the note becomes due and payable after the expiration of a nine-month grace period that begins when the debtor leaves school or ceases to be enrolled on at least a half-time basis.[4] *Id.* Debtor testified that when the grace period expired following completion of her courses in August of 1985, she made payments on her loans without

---

[3] The court notes that documents submitted for the court's consideration contained personal identifiers in violation of Fed. R. Bankr. P. 9037. Counsel are advised to follow the letter of Rule 9037 for all future submissions or risk the imposition of sanctions.

[4] Additionally, the notes are immediately mature and become due and payable upon failure "to enroll in the school for the academic period for which the loan was made," upon failure of Debtor to verify her student status, or, if the loan was made in error in reliance on a false statement.

3

any interruption for any deferment or forbearance until the filing of her bankruptcy petition. Aff. Biegler ¶¶ 6-7. Plaintiff's evidence on this point is limited to the Debtor's self-serving testimony.

Through the testimony of an Assistant Registrar at SU, the Debtor's transcript is before the court. (Aff. Ann Corbett Ex. A). It reflects that Debtor maintained a course load of between six and twelve credit hours through the spring semester of 1985. At that point, Debtor took no further classes but was enrolled for nine dissertation credit hours ("Dissertation," EDU999) in the summer semester of 1985. Debtor's transcript reflects no course enrollment or dissertation hours in the fall of 1985. Thereafter, Debtor's transcript reflects nine noncontiguous semesters, earning no credits, in which Debtor was either enrolled in the same Dissertation course or a "Degree in Progress," with fall of 1995 noted as the last semester. Debtor was awarded a Doctor of Philosophy in the spring of 1996.

The SU Assistant Registrar also testified to the apparently sole Enrollment Certification in the Debtor's file covering the spring 1987 term. SU's criteria for full-time enrollment is defined as any one of the following: (1) registration for twelve credit hours, (2) registration for nine credit hours with appointment as a graduate assistant, or (3) upon recommendation of an academic unit due to exam study, completion of language requirements, or work on a thesis or dissertation. Corbett Aff. Ex. B. The Enrollment Certification confirms Debtor's full-time student status for the spring semester of 1987 by virtue of work on her thesis or dissertation. *Id.* The Registrar's office, however, in referencing Debtor's file did not address any deferment or forbearance granted Debtor of her Student Loans, nor would it necessarily have any knowledge of the same.

Based upon its records, SU considered Debtor to be a full-time student for four semesters, a half-time student for five semesters, and a less-than-half-time student for eight semesters.[5] Corbett Aff. ¶¶ 6-8.

*2. Documents and Testimony Relied on by ECMC*

To establish that there were deferments, ECMC relies on a number of documents including the Pre-claim Form and the NYHESC letter of August 2006. The Pre-claim Form notes Debtor as the borrower on a Stafford Loan in the amount of $5,818.94. It states delinquency on that loan as the reason for the Plaintiff's requested deferment. Also noted on the Pre-claim Form is a prior deferment or forbearance from September 1, 1985 through May 1, 1988. Decl. Nolan Ex. 1.1.

The NYHESC letter of August 2006 states that a request had been made to student loan services to produce documentation relating to two deferments: (1) a hardship deferment beginning on March 1, 1989 for nine months and (2) a second hardship deferment beginning on February 8, 1992 for nine months. Decl. Nolan Ex. 1.2.

Also introduced as part of the business records maintained by NYHESC on the Plaintiff's account were documents originating from NYHESC and AFSA, the servicer of the Student Loans. Decl. Brennan Exs. 1-4. The AFSA fax was received in response to NYHESC's request for deferment and forbearance information. It notes a student deferment in favor of Julia Tinklepaugh-Biegler[6] from September of 1985 through May of 1988 that was referenced in the Pre-claim Form and references a forbearance from February 1992 through October 1992. The NYHESC letter of November 2004 refers to the AFSA fax and indicates that the underlying deferment documentation would be forthcoming. The NYHESC letter of February 2008 references the student deferment

---

[5] Full-time status for semesters: fall 1982, spring 1983, summer 1983, and spring 1984; Half-time status for semesters: fall 1983, summer 1984, fall 1984, spring 1985, and summer 1985; no enrollment in fall 1985; and Less-than half-time status for: spring 1986, summer 1986, fall 1986, fall 1991, spring 1994, fall 1994, spring 1995, and fall 1995.
[6] Tinklepaugh was an earlier surname of Debtor Julia Biegler.

5

and forbearance, calculating the due date of the loans as February 29, 1988, which was then extended by forty-two months of deferments. The NYHESC letter of December 2008 reviews the Debtor's enrollment history, deferments, and forbearances to calculate a due date of February 1, 1988, which—after extension by deferments and forbearances—would result in the Student Loans having been in repayment status for seven years as of November 11, 1995, a date after the Debtors filed their petition in bankruptcy.

## Standard of Review

As made applicable by Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56(a) provides that "[s]ummary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). Summary judgment affidavits must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

The party moving for summary judgment must show that there are no disputed material facts, and, in its analysis, the court is to make all inferences and resolve all ambiguities in favor of the non-moving party. *Id.*; *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). A disputed "genuine issue" exists when "the evidence is such that a reasonable jury could decide in the non-movant's favor." *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir.2007). The party moving for summary judgment always bears the initial burden. However, on issues where "the non-movant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that

6

negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact," at which time the burden shifts to the non-moving party. *Salahuddin v. Goord*, 467 F. 3d 263 (2d Cir. 2006) (citing Fed. R. Civ. P. 56(e) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).).[7]

## Discussion

Dischargeability proceedings are governed by the preponderance-of-the-evidence standard, *Grogan v. Garner*, 498 U.S. 279 (1991), but the burden of proof shifts between the parties. "The separate allocation of burdens, one to the debtor and the other to the creditor is consistent with the legislative history of § 523(a)(8) which indicates that this "... provision is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan." *Matter of Coleman*, 98 B.R. 443, 447 (Bankr. S.D. Ind. 1989) (quoting S. Rep. No. 989, 95th Cong. 2d Sess. 79 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5865).

Although there is a split in the case law on which party would bear the ultimate burden of demonstrating the repayment status of the Student Loans, for the purposes of this Motion it is assumed that NYHESC would have the ultimate burden.[8] Accordingly, Debtor would have to at least "point[] out ... an absence of evidence supporting the nonmoving party's case" by showing

---

[7] While courts do not engage in fact finding at summary judgment, the quality and admissibility of evidence is evaluated in light of the parties' ultimate burdens at trial. See *Celotex*, 477 U.S. at 325 (defendant movant met burden of production by "pointing out" the lack of evidence to support the opposing party's case); *Anderson*, 477 U.S. at 257 (1986) (holding that the burden of proof at summary judgment is the same heightened burden a plaintiff would ultimately bear at trial); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that party bearing the ultimate burden at trial must show more than a "metaphysical doubt as to the material facts" to survive summary judgment).

[8] In the alternate scenario, should Debtor have the ultimate burden of demonstrating that the Student Loans were in repayment status for more than seven years, Debtor's bare conclusory statement, unsupported by any documentary evidence, that she began payments at some unspecified date after the completion of her courses in August of 1985 would be insufficient to discharge her burden given Respondent's introduction of documents that cast substantial doubt that Debtor's repayment period continued uninterrupted.

7

that there is no evidence of any material suspension period. *Celotex*, 477 U.S. at 325. Debtor's position that there is no indication that the student loans were deferred is not credible.

Debtor's petition was filed on October 10, 1995. For her Student Loans to have been in repayment for seven years, they must have first become due prior to October 10, 1988 in order to be dischargeable. Should there have been any suspension period of repayment, the October 10, 1988 due date must be adjusted backwards in time as necessary for a full seven years of repayment to accrue prior to the petition date pursuant to § 523(a)(8)(A).

The Student Loans provide that the loans become due after a nine-month grace period beginning when the debtor leaves school or ceases to be enrolled on at least a half-time basis. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363, 366 (10th Cir. 1995) (educational loans become due when first installment payment is due by reference to underlying loan documentation and state law) (citing *Butner v. United States*, 440 U.S. 48 (1979)). Debtor's transcript establishes that Debtor was not enrolled at SU for the fall semester of 1985. Accordingly, Debtor potentially ceased to be enrolled on at least a half-time basis at the end of the summer semester of 1985. The record does not demonstrate what date SU's summer semester of 1985 ended, but the latest this date could possibly be would be September 1, 1985 when a new semester was underway. Consequently, the grace period would have run by June 1, 1986. In the absence of a suspension period that would reduce the repayment period to less than seven years, the Student Loans would be dischargeable under the seven-year rule. This is so because there would have been seven years of repayment by June 1, 1993 before Debtor's petition date of October 10, 1995.

However, ECMC has brought forth evidence that suggests that there were deferments that would adjust the due date of the Student Loans to within seven years of the petition date.[9] Specifically, the Pre-claim Form creates an issue of material fact as to how long the Student Loans have been in repayment because the Pre-claim Form indicates that the loans became delinquent on October 29, 1991, references the alleged two-year and eight-month student deferment from September 1, 1985 through May 1, 1988, and suggests that the referenced request resulted in the alleged nine month hardship-deferment beginning on February 8, 1992. Accepting these suspension periods as true for the purposes of this Motion in the light most favorable to the non-moving party, would indicate that the Student Loans were in repayment for six years, eight months, and nine days, less than the seven years required by § 523(a)(8)(A).[10]

## CONCLUSION

Accordingly, because there remain disputed issues of fact which are material to resolving the issues before the court and would render granting of summary judgment in favor of either party inappropriate, the Motion is denied. A pre-trial conference is set for September 7, 2017 at 11 A.M., at which time the court shall address a trial schedule.

So Ordered.

Dated: August 8, 2017
      Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge

---

[9] ECMC notes potential suspensions totaling fifty months: (1) a student deferment from September of 1985 through May of 1988 (32 months), (2) a hardship deferment beginning on March 1, 1989 for nine months, and (3) a hardship deferment beginning February 8, 1992 for nine months.

[10] This calculation assumes that Debtor ceased to be enrolled on at least a half-time basis on September 1, 1985 and, consequently, the Student Loans first became due on June 1, 1986 after the expiration of the nine-month grace period. Accordingly, the student loans would have been in repayment for nine years, four months, and nine days prior to the petition date of October 10, 1995. Assuming that the existing student deferment ran concurrently with the grace period, only 23 of the 32 months of that deferment occurred after the expiration of the grace period and would result in an adjustment of the repayment period. The total suspension period would also include the nine-month deferment beginning in February 1992, resulting in a total downward adjustment of 32 months from the unadjusted 112 months and nine days of repayment prior to October 10, 1995. After this adjustment, seven years of repayment would not have occurred until February 1, 1996.